```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
WILSON MILORD,

                Plaintiff,
                                         MEMORANDUM AND ORDER
       -against-                         11-CV-5410(JS)(ARL)

SUFFOLK COUNTY, STEVEN BELLONE,
MICHAEL MASTRAONARDI, JUDGE JOSEPH
SANTORELLI, JUDGE JAMES HUDSON,
THALIA STRAVIDES, JOSEPH WILSON,
PAUL MARGIOTA, JUDGE FLANNANGAN,
JUDGE MADELENE FITZGIBBON,
JUDGE DENNIS COHEIN, THOMAS SPOTA,
TRACY BELLONE, RICHARD SHAFFER,
SUFFOLK COUNTY SHERIFF'S DEPARTMENT,
ROBERT CICALLE, ROBIN BARHSEN,
JOHN AND JACK FARRELL,

                Defendants.
----------------------------------X
APPEARANCES:
For Plaintiffs:    Wilson Milord, Pro Se
                   10-R-3311
                   Gouverneur Correctional Facility
                   P.O. Box 480
                   Gouverneur, NY 13642

For Defendants:    No appearances

SEYBERT, District Judge:
```

Before the Court is the Complaint of incarcerated pro se plaintiff Wilson Milord ("Plaintiff") filed pursuant to 42 U.S.C. § 1983 ("Section 1983") against the defendants, Suffolk County, Steven Bellone, Michael Mastraonardi, Judge Joseph Santorelli, Judge James Hudson, Thalia Stravides, Joseph Wilson, Paul Margiota, Judge Flannangan, Judge Madeline Fitzgibbon, Judge Dennis Cohein, Thomas Spota, Tracy Bellone, Richard Shaffer, Suffolk County Sheriff's Department, Robert Cicalle, Robin Barshsen, John and Jack

Farrell (collectively, "Defendants").[1] Plaintiff paid the $350.00 filing fee. Notwithstanding Plaintiff's payment of the filing fee, his Complaint is sua sponte dismissed pursuant to 28 U.S.C. § 1915A as against Judges Santorelli, Hudson, Flannangan, Fitzgibbon and Cohein because they are entitled to absolute judicial immunity. The Complaint is also dismissed with prejudice as against District Attorney Thomas Spota and prosecuting attorney Thalia Stravides because such claims are barred by absolute prosecutorial immunity. Further, insofar as Plaintiff seeks to challenge his conviction and/or sentence, such claims are dismissed because a Petition for a Writ of Habeas Corpus is the exclusive procedural mechanism for such a challenge.

## THE COMPLAINT

Plaintiff, a self-described "political figure in Suffolk County for over 15 years" claims that he was maliciously prosecuted by the Defendants and that the Defendants have "plotted against [him] . . . as a corrupted team and fabricated stories against [him] as a way of destroying [his] political figure which resulted in [his] being put in prison. . . ." (Compl. at ¶ 15). According to the Complaint, Plaintiff was the landlord of an apartment

---

[1] The Court notes that the Complaint was originally filed on July 25, 2011 in the Southern District of New York and was not transferred to this Court until November 4, 2011. See Dkt. Nos. 1, 7-8. Accordingly, the Court deems November 4, 2011 as the date that the Complaint was filed for purposes of calculating timely service of the Complaint on the Defendants pursuant to Federal Rule of Civil Procedure 4(m).

building located in West Babylon, New York. Plaintiff describes that a lease agreement between himself and the tenants of that apartment specified that utilities (oil and electricity) were not included in the rent. (Compl. at ¶ 17). On November 20, 2007, three tenants died of carbon monoxide poisoning as a result of generators and kerosene heaters that the Plaintiff alleges the tenants placed in the apartment to provide themselves with electricity and heat. (Compl. at ¶ 18, see also Ex. "B" annexed to the Compl. at p. 41).

According to the Complaint, Plaintiff was indicted and charged with criminally negligent homicide on October 10, 2008, only after the families of the victims filed lawsuits against the Town of Babylon, Suffolk County, the Long Island Power Authority and the Fire Marshal. (Compl. at ¶¶ 19-20). Plaintiff claims that he was maliciously prosecuted on the negligent homicide charges because no investigation was done that could "link me to being the one responsible for [the . . .] generators that were found in the residence." (Id. at ¶ 21). Plaintiff further contends that Defendant Bellone, then-Town of Babylon Supervisor, "assist[ed] the malicious prosecution because he directly condemned the property that the tenants were living in (where the tragedy took place) without proper cause and this was done to make it appear that these tenants were living there illegally." (Id. at ¶ 2). Plaintiff also contends that he was "coerced into self-representation by

defendant Judge Hudson" on the indictment because Judge Hudson falsely claimed that Plaintiff refused to pay his attorneys. (Id. at ¶ 32). As a result, Plaintiff contends that the Defendants conspired together to put Plaintiff "in prison for a negligent homicide that I hade nothing to do with." (Id. at ¶ 35).[2]

Plaintiff also seeks to challenge his sentence, claiming that his commitment to the "New York State Department of Corrections for a prison term of 1 to 3 years was void on its face being that no investigation took place that could link the plaintiff directly as being the one responsible for the death[s] of those victims." (Id. at ¶ 57).

Plaintiff next alleges that he was issued notices to appear in two different courts (the Fourth and Fifth District Courts) on the same date, June 11, 2008, and time. Accordingly, Plaintiff alleges that he hand-delivered letters to the clerk of each court apprising them of the conflicting court schedule. Plaintiff claims that although the clerks advised him that he would receive a notice rescheduling the appearances, instead a bench warrant was issued for his arrest due to his non-appearance on June 11, 2008. (Id. at ¶¶ 25-27). Plaintiff also contends that he was granted an adjournment for another court appearance by Judge

---

[2] The Court notes that in June 2010, Plaintiff pleaded guilty to three counts of criminally negligent homicide, second degree grand larceny in connection with mortgage frauds and to second degree forgery for identity theft in June 2010.

4

Santorelli. Notwithstanding that adjournment, Judge Santorelli issued a bench warrant for Plaintiff's non-appearance on the original date. (Id. at ¶ 28). The Complaint describes that Plaintiff was arrested and handcuffed in front of his children even though he showed the police officers the Notice of Adjournment. (Id. at ¶ 29). Plaintiff also complains that the Defendants conspired to indict Plaintiff on fabricated grand larceny charges arising from two separate real property transactions. (Compl. at ¶¶ 64-76).

The balance of the Complaint is Plaintiff's diatribe concerning his "ordeal at the hands of political and social corruption" by the Defendants. Plaintiff contends that the Suffolk County District Attorney's Office has "defamed his character in that he is a business owner, home builder and the father of five children who have been humiliated by fabricated stories that have been printed in the media about their father." (Id. at ¶ 31). He further describes that "in the Long Island Towns of Wyandanch, Amityville, Copaigue, Lindenhurst, Brentwood, Bay Shore, Islip, Coram and Hempstead, the most pettiest of crimes of trumped-up charges of drugs, robberies, gang affiliation and a number of other charges [] are not always proven in the proper manner and protocol of law enforcement." (Id. at ¶ 37). The Complaint continues: "Alot of these charges are fabricated and used as tools to satisfy their racist appetite to destroy the population of the youth and

hinder their chances of [a] productive and positive future." (Id.). Plaintiff claims that he has been the victim of race discrimination by Suffolk County, which has eventually led to his imprisonment. (Id. at ¶ 47). For example, Plaintiff alleges that he applied and paid for an unspecified permit but the permit was not issued. (Id. at ¶ 48).

With regard to Defendant Judge Madelene Fitzgibbon, Plaintiff alleges that he wrote he a letter asking that there be an investigation and that the malicious prosecution of him cease but he claims she "ignored" his letter. (Id. at ¶ 83).

As a result of the foregoing, Plaintiff seeks to recover, inter alia, "no less than the sum of $57,000,000 (dollars)" in damages. (Compl. at page 27).

## DISCUSSION

### I. Standard of Review

A district court has the inherent power to dismiss a case, sua sponte, if it determines that the action is frivolous or the court lacks jurisdiction over the matter regardless of whether a plaintiff has paid the filing fee. Fed. R. Civ. P. 12(h)(3); Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363-364 (2d Cir. 2000). "An action is frivolous if it lacks an arguable basis in law or fact--i.e., where it is 'based on an indisputably meritless legal theory' or presents 'factual contentions [which] are clearly baseless.'" Scanlon v. Vermont,

6

423 F. App'x. 78, 79 (2d Cir. 2011) (summary order) (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

II. Judicial Immunity

Judges have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities. See, e.g., Mireles v. Waco, 502 U.S. 9, 11-12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). The absolute judicial immunity of the court "is not overcome by allegations of bad faith or malice" or "because the action he took was in error . . . or in excess of his authority." Id., 502 U.S. at 11, 13 (quotations and citations omitted). This immunity may be overcome only if a judge is alleged to have taken "nonjudicial actions" or if judicial actions were taken "in the complete absence of all jurisdiction." Id. at 11-12.

As is readily apparent, Judges Santorelli, Hudson, Flannangan, Fitzgibbon and Cohein are entitled to absolute judicial immunity. It is well settled that "[j]udges have traditionally enjoyed absolute immunity for damages arising out of judicial acts performed in their judicial capabilities." Rios v. Third Precinct Bay Shore, No. 08-CV-4641 (JFB)(ETB), 2009 WL 2601303, at *3 (E.D.N.Y. Aug. 20, 2009) (citing Mireles v. Waco, 502 U.S. 9, 11-12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991)). Plaintiff's only allegations against each of these judges concern judicial acts undertaken with which Plaintiff disagrees. Such acts are protected

7

by absolute immunity. Even liberally construed, Plaintiff alleges no acts performed by any of the Defendant judges that fall outside the scope of absolute judicial immunity. Accordingly, the claims against Judges Santorelli, Hudson, Flannangan, Fitzgibbon and Cohein are barred by judicial immunity and are dismissed as frivolous pursuant to 28 U.S.C. § 1915A. See Mills v. Fischer, 645 F.3d 176 (2d Cir. 2011).

III. Prosecutorial Immunity

Defendant Stravides, the prosecuting attorney in Plaintiff's underlying criminal case, and Defendant Thomas Spota, the Suffolk County District Attorney, are entitled to absolute prosecutorial immunity from Plaintiff's damages claims. The Second Circuit has held that:

> Absolute immunity affords 'complete protection from suit,' Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982), because it gives 'public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities,' Barr v. Abrams, 810 F.2d 358, 361 (2d Cir. 1987), so that they will not feel 'constrained in making every decision by the consequences in terms of [their] own potential liability in a suit for damages,' Imbler v. Pachtman, 424 U.S. 409, 424-25, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). The doctrine's nature 'is such that it "accords protection from . . . any judicial scrutiny of the motive for and reasonableness of official action,"' Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005) (quoting Robinson v. Via, 821 F.2d 913, 918 (2d Cir. 1987)), even where the challenged conduct was motivated by a wrongful motive or even malice, Bernard v. County of Suffolk, 356

> F.3d 495, 503 (2d Cir. 2004) (citing <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 199-200, 106 S. Ct. 496, 88 L. Ed. 2d 507 (1985)).

<u>In re NYSE Specialists Securities Litigation</u>, 503 F.3d 89, 95-96 (2d Cir. 2007).

Under federal law, prosecutors enjoy absolute immunity from liability in suits seeking monetary damages for acts carried out in their prosecutorial capacities, <u>i.e.</u>, those acts "intimately associated with the judicial phase of the criminal process," <u>Imbler</u>, 424 U.S. at 430, 96 S. Ct. 984; <u>see also</u> <u>Parkinson v. Cozzolino</u>, 238 F.3d 145, 150 (2d Cir. 2001), but not for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." <u>Imbler</u>, 424 U.S. at 430-1, 96 S. Ct. 984. Absolute prosecutorial immunity applies, <u>inter alia</u>, when a prosecutor prepares to initiate and pursue a prosecution, <u>see</u>, <u>e.g.</u> <u>Kent v. Cardone</u>, 404 F. App'x 540, 542-43 (2d Cir. Jan. 5, 2011); <u>Peay v. Ajello</u>, 470 F.3d 65, 68 (2d Cir. 2006), or engages in administrative duties that are directly connected with the conduct of a trial, <u>Van de Kamp v. Goldstein</u>, 129 S. Ct. 855, 861-2, 172 L. Ed. 2d 706 (2009); <u>see also</u> <u>Warney v. Monroe County</u>, 587 F.3d 113 (2009) ("a prosecutor enjoys absolute immunity even when doing an administrative act if the act is done in the performance of an advocacy function.") Once absolute immunity attaches, it "attaches to [the prosecutor's] function, not the manner in which he

performed it. * * * Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." Parkinson, 238 F.3d at 150 (internal quotations and citations omitted); see also Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005) (holding that once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive).

Here, Plaintiff alleges no facts indicating that the conduct of which Plaintiff complains would fall outside the scope of prosecutorial immunity. Accordingly, Plaintiff's claims against Stravides and Spota are barred by prosecutorial immunity and are dismissed with prejudice as frivolous pursuant to 28 U.S.C. § 1915A. See Collazo v. Pagano, 656 F.3d 131(2d Cir. 2011).

IV. Habeas Relief

A prisoner seeking to be released from illegal state custody may apply to a federal district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before a federal court may address a petitioner's claim, the claim must first have been properly presented to the appropriate state court, with appeals exhausted to the extent permitted by state procedures. A state prisoner has one year from the date his conviction becomes final to

file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period beings to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). For New York prisoners, a conviction is generally final 90 days after leave to appeal to the New York Court of Appeals is denied because such defendants have 90 days to seek <u>certiorari</u> review before the United States Supreme Court. <u>McKinney v. Artuz</u>, 326 F.3d 87, 96 (2d Cir. 2003); <u>see</u> <u>also</u> Sup. Ct. R. 13.

Insofar as Plaintiff seeks to challenge his conviction and sentence, the exclusive procedural mechanism for pursuing this relief is a petition for a writ of <u>habeas</u> <u>corpus</u> pursuant to 28 U.S.C. § 2254. Plaintiff is advised that Section 2254 has strict statutory timeliness and exhaustion requirements, and the Court makes no determination on any of these issues at this time. Accordingly, the portion of Plaintiff's Complaint concerning his alleged illegal detention is dismissed with leave to file a Petition for a Writ of <u>Habeas</u> <u>Corpus</u>, if appropriate.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore <u>in</u> <u>forma</u> <u>pauperis</u> status is denied for the purpose of any appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

11

IV. Conclusion

For the foregoing reasons, it is hereby:

**ORDERED** that Plaintiff's claims against Defendants Santorelli, Hudson, Flannangan, Fitzgibbon and Cohein are dismissed with prejudice pursuant to 28 U.S.C. § 1915A because these Defendants are entitled to absolute judicial immunity;

**ORDERED** that Plaintiff's claims against Defendants Stravides, and Thomas Spota are dismissed with prejudice pursuant to 28 U.S.C. § 1915A because these Defendants are entitled to absolute prosecutorial immunity;

**ORDERED** that Plaintiff's Section 1983 claims challenging his conviction are dismissed because the exclusive procedural mechanism for pursuing this challenge is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254; and

**ORDERED** that Plaintiff's remaining claims shall proceed and Plaintiff shall serve the Complaint on the remaining Defendants by **March 4, 2012** pursuant to Federal Rule of Civil Procedure 4(m).

SO ORDERED.

/s/ JOANNA SEYBERT
JOANNA SEYBERT, U.S.D.J.

Dated: January   19  , 2012
       Central Islip, New York